UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

SAMUEL MARA,

                        Defendant.
_____

**REPORT, RECOMMENDATIN
AND ORDER**

20-CR-00180(LJV)(JJM)

 

Defendant Samuel Mara is charged in a two-count Superseding Indictment [29][1]
with making threats by interstate communications, in violation of 18 U.S.C. §875(c), and
cyberstalking, in violation of 18 U.S.C. §2261A(2)(B).  Before the court are defendant's pretrial
omnibus motion [53] and the government's cross-motion for reciprocal discovery. Government's
Response [57], pp. 45-46.   Having considered the parties' submissions [53, 57, 65] and heard
oral argument on March 23, 2021 [68], for the following reasons, the government's cross-motion
is granted, defendant's non-dispositive motions are denied, and I recommend that defendant's
dismissal motion also be denied.


## BACKGROUND

In June and July of 2020, defendant was a participant in the Black Lives Matter
movement in and around the City of Buffalo. Rumi Affirmation [53], ¶¶18-19.  On June 6, 2020,
a Facebook Live post was allegedly filmed and broadcast by "A.M." during a protest march that
captured defendant stating:

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF
pagination (upper right corner of the page).

"Listen . . .  what they're gonna do is, they're gonna drive themselves crazy outta' all the overwhelming fear and one of them is (inaudible) gonna hurt us or kill us and that's gonna start (inaudible) and then we gonna do whatever the fuck we want. It will happen, we are in power. They are scared. They will act off impulse and they will try to kill us, when they do that. Then they will all die. We will kill them all. I will personally kill [Victim 1]." Government's Response [57], p.3.[2]

On June 16, 2020, a Facebook post from an account believed to be associated with defendant allegedly read: "Hey slave [social media account of Buffalo Police Officer]. I'll be at the Niagara Square today around 2-3 for a few hrs, if you or [social media account for Victim 1] the ROBOT wanna talk to me MAN to MAN then come see ME, we can do it without cameras as well".  Id., p. 4.[3]

Likewise, an Instagram account used by defendant allegedly posted a video on June 18, 2020 of "defendant sitting on the McKinley Monument" in downtown Buffalo, during which he shows "a large redish-brown stain between his feet and says, 'That's my blood.' The defendant then shows a redish-brown handprint on the monument and states, 'That's my f[######] hand.' The defendant then returns the camera to show his face and speaks directly at the camera stating, 'Do something about it, take me down. Come here right now, take me down, and come take me off this motherf[#####].'" Id., p. 5.

Defendant's alleged posts continued on June 24, 2020, with the following Twitter post:  "You really got me angry now bra.. you made the WORST decision you could've possible made, y'all NEVER try this shit when I'm here [social media account for Victim-1] [social media account of Buffalo Police Officer]@BPDAlerts".  Id., p. 6.

---

[2]    Unless otherwise noted, the allegations are taken from the "Factual Background" section of the government's Response to defendant's omnibus pretrial motion. [57], pp. 2-9.

[3]    Defendant allegedly tagged Victim 1 in many of his posts. According to the government this "is akin to sending the message to the user". Government's Response [57], p. 5 n. 4.

Defendant also allegedly posted two videos of him at Victim 1's residence. The first, posted on June 25, 2020, showed defendant approaching the residence with others and he "appears to be screaming at Victim 1" until he encounters law enforcement and departs. The second, posted on July 4, 2020, shows defendant being physically prevented by law enforcement from approaching Victim 1, who was in his driveway. Id., p. 7. The text accompanying the post read: "gotta be quicker than thaaat [first name of Victim 1]". Id.

On July 3, 2020 defendant allegedly made another post to Twitter depicting images of Victim 1 shaking hands with and hugging other individuals. Part of the caption read: "I'm showing you ZERO mercy when the time comes.. you continue to make me angry". Id. (emphasis in original). On July 5, 2020, defendant allegedly posted on Snapchat: "Your son's soul is next. . warn him [Victim 1]", as well as screen shot from a Facebook Messenger direct message between defendant and Victim 1's son, in which defendant stated, "I want your soul . . . . Give it to me or I'll take it from you, through your eyes". Id., p. 8.

Defendant's alleged posts ceased from July 15-27, 2020, while admitted to the hospital for psychiatric evaluation,[4] but promptly resumed on July 29, 2020, with an Instagram post that stated "No Mercy . . . [Victim 1]". Id., p. 9.

---

[4]    Defendant's pretrial motion contains notice of his intention to pursue an insanity defense. [53], ¶¶94-107. Pursuant to 18 U.S.C. §4242(a), I have directed that he undergo a psychiatric or psychological examination and that a report be prepared [71].

## DISCUSSION

**A.    Defendant's Pretrial Motions**

**1.    Motion to Dismiss**

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001). That is because "[a]n indictment returned by a legally constituted and unbiased grand jury . . .  if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956).  See United States v. Coffey, 361 F. Supp. 2d 102, 111 (E.D.N.Y. 2005) ("the validity of an indictment is tested by its allegations, not by whether the Government can prove its case").

**a.    Count 1**

Count 1 of the Superseding Indictment alleges that:

> "On or about June 6, 2020, in the Western District of New York, and elsewhere, the defendant . . . did knowingly, willfully, and unlawfully, and for the purpose of issuing a threat and with knowledge that the communications would be viewed as a threat, transmit communications in interstate commerce, that is, a video posted on the internet website 'Facebook' which traveled between the State of New York and the State of California, which contained a threat to injure the person of another, specifically, Victim 1, a person known to the Grand Jury", in violation of 18 U.S.C. §875(c).

Both parties agree that the conduct underlying Count 1 is the June 6, 2020 Facebook Live post.  To establish a violation of §875(c), "the Government must prove beyond a reasonable doubt that: (1) the defendant intentionally transmitted a communication in interstate commerce, . . . (2) the circumstances were such that an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury (*i.e.*, the objective component), . . .  and (3) the defendant transmit[ted] [the] communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat (*i.e.*, the subjective component)". United States v. Segui, 2019 WL 8587291, *5 (E.D.N.Y. 2019) (internal quotations omitted).

Defendant seeks the dismissal of this Count on several different grounds.  First, he argues that the Affidavit of Special Agent Jason Galle supporting the initial Criminal Complaint in this action establishes that it was "'A.M', not the Defendant who set up and transmitted the live Facebook feed".  Rumi Affirmation [53], ¶117.  However, summary judgment generally "does not exist in federal criminal procedure", since "the sufficiency of the evidence is not appropriately addressed by" a pretrial motion to dismiss.  United States v. Sampson, 898 F.3d 270, 282 (2d Cir. 2018); United States v. Parker, 165 F.Supp.2d 431, 458 (W.D.N.Y. 2001).  It is only in the "extraordinarily narrow" circumstance when the government offers "what can fairly be described as a full proffer of the evidence it intends to present at trial", that the sufficiency of the evidence may be tested.  Sampson, 898 F.3d at 282. Here, the government has made an extensive proffer of its evidence (see government's Response [57], pp. 2-9, Factual Background), but it stops short of characterizing it as a full proffer. Government's Response [57], p. 31.  Therefore, I cannot resolve defendant's evidentiary challenge at this stage.

In any event, even if the government's proffer was complete, the facts it has alleged - including that defendant was reading the livestream comments during the recording of the video (government's Response [57], pp. 3-4) - raise at least a triable issue of fact as to whether he knew that his statements were being transmitted on Facebook Live. See United States v. Kelner, 534 F.2d 1020, 1022 (2d Cir. 1976) ("it is apparent that Kelner willfully caused the transmission of his threat over the WPIX facilities in that he took action without which the communication would not have occurred, intending (or at least reasonably foreseeing) that his statement would be transmitted in interstate commerce by others").

Next, defendant argues that his statements, which constituted "political hyperbole" are entitled to First Amendment protection, and therefore, as applied to him, the statute is unconstitutional. Rumi Affirmation [53], ¶¶119, 121-22, 134.  In response, the government argues

that defendant's speech constituted "true threats", which are not protected by the First Amendment. Government's Response [57], pp. 33-34. Resolution of the parties' competing arguments (*i.e.*, whether the Facebook post constituted protected speech or a true threat) must await determination by the jury.  *See* <u>United States v. Malik</u>, 16 F.3d 45, 51 (2d Cir. 1994) ("[a]bsent such an unusual set of facts . . . existence *vel non* of a 'true threat' is a question generally best left to a jury"); <u>United States v. Carrier</u>, 672 F.2d 300, 306 (2d Cir. 1982) ("whether words used are a true threat is generally best left to the triers of fact"); <u>United States v. McClain</u>, 2019 WL 8955241, *4 (W.D.N.Y. 2019), <u>adopted</u>, 2020 WL 1503227 (W.D.N.Y. 2020) ("[w]here . . . statutes employ the word 'threat,' it is generally held that the better course is to decide each case on its facts leaving defendant's intent as a question for the jury"). *See also* <u>United States v. Yassin</u>, 2017 WL 1324141, *7 (W.D. Mo.), <u>adopted</u>, 2017 WL 1337438 (W.D. Mo. 2017) ("[i]f the jury is properly instructed and finds that Defendant's statements violated § 875(c), h[is] conviction would be constitutional").

Even if defendant's statements were being made in the context of his "opposition to the politics of Victim 1 and the City of Buffalo Police Department", as he asserts (Rumi Affirmation [53], ¶164), that does not shield those statements that constitute true threats.  *See* <u>United States v. Stevens</u>, 2016 WL 7442657, *2 (N.D. Okla. 2016), <u>aff'd</u>, 881 F.3d 1249 (10th Cir. 2018) ("[t]he fact that defendant sent the messages . . . [as] a part of a larger political debate concerning race and policing does not preclude the communications from being true threats . . . . The communications repeatedly assert that the targets of the messages are going to die unless they comply with defendant's wishes. A jury could determine that 'a reasonable person would interpret the statements to be threats.' . . . Thus, it cannot be said as a matter of law that defendant's speech is protected").

While defendant relies on <u>Watts v. United States</u>, 394 U.S. 705 (1969) (Rumi Affirmation [53], ¶¶133-34), it addressed a motion for acquittal *after* the government's trial evidence demonstrated that the defendant's alleged threat against the President of the United States was merely "political hyperbole", and not a true threat. <u>Id.</u>, 708.  <u>Watts</u> is also factually dissimilar.  There, an anti-war protester's threat was not a true threat for several factors, including that it was "was expressly made conditional upon an event - induction into the Armed Forces - which petitioner vowed would never occur, and that both petitioner and the crowd laughed after the statement was made".  <u>Id.</u>, 707-08.

Defendant also points to the intent element of the offense, and alleges that he "did not intend to threaten 'Victim 1', nor did he have knowledge that 'Victim 1' would regard his communications as a threat".  Rumi Affirmation [53], ¶137.  "[W]hether or not [defendant] subjectively intended his statements to be threatening or political hyperbole is a clearly a factual disagreement, one in which this Court may not opine, analyze, or further discuss - factual issues remain the duty of the jury. What this Court may address is whether the indictment against [the defendant] is legally sufficient." <u>United States v. Killingsworth</u>, 2020 WL 4703090, *4 (N.D. 2020). Since the Superseding Indictment [29] plainly alleges that defendant's post was made "*knowingly, willfully, and unlawfull*y, and for the purpose of issuing a threat and with knowledge that the communications would be viewed as a threat", this argument must await trial (emphasis added).

Likewise, defendant argues that the conditional nature of his alleged threat distinguishes it from a true threat. Rumi Affirmation [53], ¶¶129-30, 138 (he would only act in the event that "'Victim 1' or his supporters first tried to harm [him] or the other participants at the protest rally").  However, "[m]ost threats are conditional; they are designed to accomplish

something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats". United States v. Schneider, 910 F.2d 1569, 1570 (7th Cir. 1990) (emphasis in original). Hence, the Second Circuit has "affirmed convictions for threats that were both conditional and inexplicit". United States v. Turner, 720 F.3d 411, 424 (2d Cir. 2013).

Finally, in conclusory fashion, defendant argues that Count 1 lacks specificity and fails to inform him of the charge against which he must defend. Rumi Affirmation [53], ¶¶139-41. However, Count 1 generally tracks the language of §875(c), and nothing put forth by defendant establishes that he is not fully apprised of the crime charged against him.

### b.    Count 2

Unlike Count 1, which focuses entirely on the June 6, 2020 Facebook post, Count 2 of the Superseding Indictment is based on a wider array of conduct. It alleges that:

> "From on or about June 6, 2020, to on or about July 29, 2020, in the Western District of New York, and elsewhere, the defendant . . . with the intent to harass and intimidate another person, that is, Victim 1, a person known to the Grand Jury, did use an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause, substantial emotional distress to Victim 1", in violation of 18 U.S.C. §2261A(2)(B).

18 U.S.C. §2261A(2)(B) prohibits the intentional use of "any interactive computer service ... of interstate commerce . . . to engage in a course of conduct that . . . causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to" another person. "By its own text, § 2261A(2)(B) regulates conduct, not content". United States v. Bandy, 2021 WL 876980, *4 (D.N.M. 2021). However, "'[c]onduct' of course, may also enjoy First Amendment protection if it is 'sufficiently imbued with elements of communication.'" United

States v. Ackell, 907 F.3d 67, 73 (1st Cir. 2018) (*quoting* Texas v. Johnson, 491 U.S. 397, 404 (1989)).

As discussed above, "true threats" are among the categories of speech not protected by the First Amendment.  Likewise, "speech integral to criminal conduct" is unprotected.  *See* United States v. Sergentakis, 2015 WL 3763988, *3 (S.D.N.Y. 2015), aff'd, 787 Fed. App'x 51 (2d Cir. 2019). *See* Packingham v. North Carolina, __U.S.__, 137 S. Ct. 1730, 1737 (2017) ("[s]pecific criminal acts are not protected speech even if speech is the means for their commission").

As with Count 1, defendant primarily argues that he engaged in protected speech, and that application of the cyberstalking statute to his alleged conduct would be unconstitutional.  For example, he argues that his "disjointed [ramblings] and sometimes incoherent thoughts that have a clear political agenda are not the focus of the cyberstalking statute".  Rumi Affirmation [53], ¶155.  However, for the reasons discussed above, the question of whether defendant's speech falls within the "true threats" or "speech integral to criminal conduct" exceptions to First Amendment protection must be resolved by the jury.

Defendant's reliance on United States v. Cook, 472 F.Supp.3d 326 (N.D. Miss. 2020) (Rumi Affirmation [53], ¶¶158, 162-63) does not compel a different conclusion.  In Cook, the defendant made public Facebook postings highly critical of those involved in his prosecution following his acquittal.  In one post, after detailing the corruption that existed in the criminal justice system, he stated "God willing, I'm going to take them out.  With or without the help of the people". 472 F. Supp. 3d at 328-30.  The defendant never "directly contacted" the people "he named in his posts via direct message, email, telephone, letter or otherwise". Id., 331.

In concluding that application of the cyberstalking statute was unconstitutional as applied to the defendant as a prohibited restriction of content-based free speech, the court found that the defendant's postings "when read in context, lack entirely the specificity required to bring them under the umbrella of a true threat. *Nowhere in any post does Cook explicitly state that he plans to physically harm . . . any . . . named public official.* 'God willing I'm going to take them out' is not the same as telling an FBI agent you have a pistol and you will use it to kill the president'" Id., 335 (emphasis added).

The same cannot said of defendant's alleged statements (*e.g.*, "I will personally kill [Victim 1]"), which are much more akin to those at issue in United States v. Moreland, 207 F. Supp. 3d 1222 (N.D. Okla. 2016), where "many of [the defendant's] emails . . . referenced topics that concern matters at least touching on politics or similar issues of public concern. But his communications . . . went well beyond political statements or comments about issues of public concern. His communications directly referenced violence". Id., 1230.

Moreover, the government's proffer demonstrates that defendant's alleged conduct was not limited to just his statements, but also encompasses him showing up at Victim 1's residence and necessitating law enforcement intervention. *See* United States v. Hagar, 822 Fed. App'x 361, 371 (6th Cir. 2020), cert. denied, 2021 WL 78433 (2021) ("[p]ossession of firearms and ammunition was direct evidence that his threats to shoot his victims were 'true threats' to injure and not 'merely idle or careless talk'").

Defendant's remaining arguments are also unpersuasive. He contends that "there is no definitive proof that the social media posts that form the basis of count 2 . . . were created or posted by [him]". Rumi Affirmation [53], ¶164. Not only is that argument premature, but it is also incorrect: "definitive proof" is not required (now or at trial) to support the charge.

Defendant also argues that Count 2 "fails to state an offense, lacks specificity, and does not fairly inform [him] of the charge against which he must defend". Rumi Affirmation [53], ¶166. Like Count 1, this count also generally tracks the language of the statute, and defendant's conclusory arguments offer no basis to conclude that he is not fully apprised of the crime charged against him, especially given the expansive factual proffer offered by the government. Therefore, I recommend that defendant's motion to suppress be denied.

### 2.    Motion for a Bill of Particulars

Fed. R. Crim. P. ("Rule") 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense". United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).[5] "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). "[T]he burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights". United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y. 2014).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence,

---

[5]    Some courts have questioned the double jeopardy justification for granting particularization. *See, e.g.*, United States v. Payden, 613 F.Supp. 800, 816 n. 16 (S.D.N.Y. 1985).

witnesses, and legal theories to be offered by the Government at trial or as a general investigative

tool for the defense". United States v. Henry, 861 F.Supp.1190, 1197 (S.D.N.Y. 1994).

      The court "has the discretion to deny a bill of particulars if the information sought

by defendant is provided in the indictment or in some acceptable alternate form". United States

v. Barnes, 158 F.3d 662, 665 (2d Cir.1998). See United States v. Messina, 2012 WL 463973,

*10 (E.D.N.Y. 2012) ("[i]n determining whether a defendant has shown such necessity, the trial

court must examine the totality of the information available to the defendant, including the

indictment and general pre-trial discovery"). "The necessity of a bill of particulars depends on

the nature of the charged crime." United States v. Meregildo, 2012 WL 3834732, *5 (S.D.N.Y.

2012).   "Whether to grant a bill of particulars rests within the sound discretion of the district

court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

      Defendant seeks the following particularization for each count of the Superseding

Indictment:

> "(a) Specify each and every document that the government will rely upon to prove
> the commission of these offenses;
>
> (b) Specify the manner it will be shown that [defendant] knowingly, willfully and
> unlawfully combined and/or agreed to commit these offenses;
>
> (c) State the exact time and place that the alleged crimes occurred;
>
> (d) State the exact time and place where [defendant] was arrested;
>
> (e) State the exact way in which [defendant] took part in the offenses alleged to have
> occurred on or about June 6, 2020, and from about June 6, 2020 through July 29, 2020;
>
> (f) State how law enforcement was first informed of the alleged crimes committed by the
> [defendant];
>
> (g) State what information was given to law enforcement, and when such information
> was given, which gave them probable cause to arrest and charge [defendant];

(h) Identify who supplied said information to law enforcement and the manner which it was supplied; [and]

(i) If no information was given to law enforcement, state what was observed which gave the arresting officers probable cause to arrest [defendant]". Rumi Affirmation [53], ¶7.

The crimes alleged here are not complex or expansive. In any event, defendant has the benefit of not only the discovery produced by the government thus far, but also the Criminal Complaint Affidavit and expansive proffer the government has put forth in response to his pretrial motion. Collectively, these are sufficient to enable him to prepare a defense, prevent unfair surprise at trial, and raise a double jeopardy bar. *See* United States v. Calvente, 2013 WL 4038952, *2 (S.D.N.Y. 2013) (denying a bill of particulars where "the Government has already provided much, if not all, Rule 16 discovery, and this Court will require it to provide Jencks Act material in advance of trial to apprise the Defendants of the essential facts"). *See also* United States v. Vendetti, 2013 WL 5522860, *13 (W.D.N.Y.), adopted, 2013 WL 5522434 (W.D.N.Y. 2013) ("[n]otwithstanding the government's opposition to defendants' motions for bills of particulars, its response to defendants' pretrial motions . . . includes an extensive introduction captioned 'Theory of the Case and Outline of the Proof' . . . amplifying the allegations of the Second Superseding Indictment. While not in the form of a bill of particulars, I deem it to constitute a bill of particulars"). Therefore, the motion is denied.

### 3.    Motion for Rule 16 Discovery

"Rights of discovery in criminal cases, unlike in civil cases, are severely circumscribed." BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon, 1995 WL 489426,

*4 (S.D.N.Y. 1995).  Apart from the government's <u>Brady</u>,[6] <u>Giglio</u>,[7] and Jencks Act (18 U.S.C. §3500) obligations, which are addressed separately, "Rule 16 is . . . the sole authorized vehicle under the Federal Rules of Criminal Procedure for pre-trial discovery in criminal cases". <u>United States v. Louis</u>, 2005 WL 180885, *2 (S.D.N.Y. 2005).

Defendant moves pursuant to Rule 16 for various forms of discovery. Rumi Affirmation [53], ¶¶8-42.  In response, the government represents that "[t]o date, [it] has complied with all the requirements of Rule 16". Government's Response [57], p. 15.  It also acknowledges that it "will continue to provide any discoverable materials in conformity with Rule 16 or in response to reasonable requests by the defendant".  <u>Id</u>., p. 14.

"Where the Government makes good faith representations that it is complying with Rule 16, and that it will continue to do so, courts in this Circuit deny specific discovery requests." <u>United States v. Zelaya-Romero</u>, 2018 WL 1033235, *3 (S.D.N.Y. 2018).  Defendant has "not pointed . . .  to anything that suggests otherwise, and [I] ha[ve] no reason to doubt the Government's representations. Those assurances are sufficient; the Government is not required to conduct a separate investigation for the purpose of responding to a defendant's discovery requests." <u>Id</u>.  Nor, in response to the government's representations, does he identify any specific requests for discovery that he contends fall within the scope of Rule 16, but have not been produced by the government.

While much of defendant's motion focuses on obtaining law enforcement documents (Rumi Affirmation [53], ¶¶25-30), the government correctly notes - and defendant acknowledges (*see* <u>id</u>., ¶30) - that Rule 16(a)(2) specifically exempts "internal government

---

[6]      <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).
[7]      <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

documents" prepared by "an attorney for the government or other government agent in connection with investigating or prosecuting the case".

Defendant also seeks the government's witness list "in order to be prepared for trial and effectively present a defense". Rumi Affirmation [53], ¶40. The government represents that "[w]ell in advance of trial", it will produce a witness list. Government's Response [57], p. 13. So long as the witness list is produced at a time no later than directed by the trial judge, defendant's ability to prepare a defense will not be hampered. His generalized arguments do not establish that any earlier production of the witness list is necessary. *See* United States v. Stephenson, 2020 WL 2115719, *11 (W.D.N.Y.), adopted, 2020 WL 2113496 (W.D.N.Y. 2020) (declining to order earlier production of a witness list where the government represented that it would "disclose its witness list when ordered to do so by the District Court"). Therefore, this motion is denied.

### 4.     Motion for Discovery Pursuant to Fed. R. Evid. 403, 404(b) and 609

Defendant seeks disclosure of "any evidence intended to be offered at trial that would cause undue surprise or prejudice, evidence of other crimes intended to prove character, or evidence of prior convictions the Government intends to use for purpose of impeachment of [him] should he testify". Rumi Affirmation [53], ¶43.[8] The government responds that it will provide notice of Fed. R. Evid. 404(b) and 609 information pursuant to the trial judge's scheduling order, noting that defendant has not established a basis for early disclosure. Government's Response [57], p. 18. I agree with the government, and based on its

---

[8]     While defendant relies on Fed. R. Evid. 403, that Rule addresses exclusion of evidence, rather than its production.

representations, deny the motion.  *See* United States v. Robinson, 2010 WL 2595314, *4

(W.D.N.Y. 2010).


     **5.**     **Motion for Discovery Pursuant to Fed. R. Evid. 702, 703 and 705**

     Defendant seeks "a list of the Government's expert witnesses, if any, and the

substance of any reports from these witnesses . . . as well as written summaries of their

anticipated testimony".  Rumi Affirmation [53], ¶44.  The government represents that "at this

time, [it] does not have in its possession any scientific reports related to this case", but will

disclose "all materials that are discoverable under [Rule] 16(a)(1)(F), and that are in the

possession of the government", including "timely provide the experts' credentials and methods",

"Curricula Vitae" and "summary of anticipated expert testimony in accordance with the standard

District Court pre-trial Order".  Government's Response [57], pp. 16-17.  Based on those

representations, the motion is denied.  *See* United States v. Allen, 2017 WL 5897472, *3

(W.D.N.Y. 2017) ("[t]he Government has previously indicated that it has and will continue to

comply with the requirements of Rule 16, which requires the production of information about

expert witnesses in accordance with Federal Rules of Evidence 702, 703 and 705. In light of

these representations, defendant's motion is denied as moot").


     **6.**     **Jencks Act (18 U.S.C. §3500) Material**

     Defendant moves for disclosure of Jencks Act material 60 days in advance of

trial, and identifies a list of items that he contends constitute Jencks Act material. Rumi

Affirmation [53], ¶45.  However, "Courts in this Circuit have consistently held that district

courts lack the power to mandate early production of Jencks Act material." United States v.

Morgan, 690 F.Supp.2d 274, 286 (S.D.N.Y. 2010). *See* Coppa, 267 F.3d at 145 (the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements"); In re United States, 834 F.2d 283, 287 (2d Cir. 1987) ("as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act"); United States v. Parris, 2014 WL 2745332, *14 (S.D.N.Y. 2014) ("[t]he Jencks Act provides that the Government must produce prior statements of its witnesses after each has testified at trial and deprives the District Courts of the power to mandate early production of such material"); United States v. Scott, 2015 WL 1525580, *4 (D. Conn. 2015) ("[t]he Second Circuit has consistently held that a district court's 'power to order pretrial disclosure is constrained by the Jencks Act,' and that the district court may not order advance disclosure inconsistent with the Jencks Act itself"). Nonetheless, the government agrees to produce any Jencks Act material no later than the deadline set by the trial court. Government's Response [57], p. 20.

At this time, I have no reason to believe that the government will not act reasonably and in good faith with respect to its Jencks Act obligations. I also have no reason to question whether the government understands its Jencks Act obligations. Therefore, based on the government's representations, the motion is denied.

### 7. Motion for Production of <u>Brady</u>/<u>Giglio</u> Material

Defendant moves for production of a variety of Brady and Giglio material. Rumi Affirmation [53], ¶¶47-68. In response, the government acknowledges its continuing duty under Brady to provide defendant with exculpatory evidence. Government's Response [57], p. 20. However, it argues that "[t]he Brady doctrine does not cover many of the requests made by the

defendant[]".  Id., p. 21.  In reply, defendant does not identify any specific request that he believes falls within Brady, but has not been produced.   With respect to Brady impeachment material, the government agrees to produce such material "in accordance with the schedule set by the District Court prior to trial and no later than when the government produces and delivers the Jencks Act [18 U.S.C. §3500] material".  Id., p. 22.

"The government's obligations under Brady . . . are seemingly well-established. The prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment . . . . This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness."  United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (citing Giglio, 405 U.S. at 154).  "[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant".  Id. at 146.  "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."  Id. at 144.  "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case".  Id. at 146.

Based upon the government's representations, defendant's motion is denied. Consistent with Coppa, the government shall timely disclose Brady and Giglio materials to defendant.  See United States v. Hill, 2012 WL 912948, *5 (W.D.N.Y. 2012).

**8.    Motion for Preservation of Rough Notes and Other Evidence**

The government does not object to this request, except to note that retention of notes is not required if subsequently incorporated into a report and that even if rough notes are

retained, they are not discoverable, even as Jencks material.  Government's Response [57], p. 23.

In reply, defendant does not object to those carve-outs.  Therefore, the motion is denied as moot.

### 9.    Motion to Suppress Statements

In response, the government states that "defendant did not provide custodial

statements".  Therefore, the motion is denied as moot.

### 10.    Motion for Informant Identities

As defendant clarifies in his reply, his motion for the identify of informants

centers on obtaining confirmation as to whether "A.M." was an informant, so that he may

pursue a potential entrapment defense. Rumi Reply Affirmation [65], ¶¶5-12.  However, at oral

argument, the government represented that A.M. was not acting as an informant, and that much

of the evidence against defendant was obtained from publicly accessible websites and accounts.

Based on those representations, the motion is denied.

### 11.    Motion for Leave to File Additional Motions

Defendant "reserves the right to make further motions as factors and evidence

emerge through the requested disclosure". Rumi Affirmation [53], ¶167. At this point,

defendant's motion is denied as premature, without prejudice to the possibility of additional

motions in the future, upon a showing of good cause for why they were not timely asserted. *See*

Rule 12(c)(3).

**B.      Government's Cross-Motion for Reciprocal Discovery**

The government cross-moves for the production of reciprocal discovery pursuant to Rule 16(b).  Government's Response [57], pp. 45-46.  Additionally, it seeks a summary of any testimony that the defendant intends to use under Fed. R. Evid. 702, 703, or 705 at trial. Id. Since defendant does not oppose this motion, it is granted.

## CONCLUSION

For the following reasons, the government's cross-motion ([57], pp. 45-46) is granted, defendant's non-dispositive motions [53] are denied, and I recommend that defendant's dismissal motion (id.) also be denied. Unless otherwise ordered by Judge Vilardo, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by May 3, 2021.  Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not

raised to the Magistrate Judge".  Failure to comply with these provisions may result in the

district judge's refusal to consider the objection.

Dated: April 19, 2021

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
